Matthew Sklar
Scott S. Christie (*pro hac vice* to be applied)
Carissa L. Rodrigue (*pro hac vice* to be applied)
Olga Ugolev (*pro hac vice* to be applied)
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4056
Telephone:  (973) 622-4444
msklar@mccarter.com
schristie@mccarter.com
crodrigue@mccarter.com
ougolev@mccarter.com

*Attorneys for Plaintiff*
*J.T. Kalmar GmbH*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| J.T. KALMAR GMBH, | C.A. No. _ 17-9636 _____ |
| Plaintiff, | |
| v. | **VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL** |
| KLS LIGHTING CO LTD, f/k/a KALMAR LIGHTING CO LTD, f/k/a SHANGHAI KALMAR LIGHTING CO LTD, | |
| Defendant. | |

For its Complaint against Defendant KLS Lighting Co Ltd, f/k/a Kalmar Lighting Co Ltd, f/k/a Shanghai Kalmar Lighting Co Ltd ("KLS" or "Defendant"), Plaintiff J.T. Kalmar GmbH ("KALMAR" or "Plaintiff") alleges as follows:

### NATURE AND BASIS OF THE ACTION

1.     This is an action by KALMAR to prevent and restrain KLS's unauthorized and

infringing misappropriation of KALMAR's well-known and distinctive KALMAR trademark, and to halt KLS's false and misleading advertising. KALMAR is a family business that has operated for over 130 years in designing, engineering, manufacturing, installing and maintaining custom and manufactured lighting fixtures, garnering extensive and well-established goodwill in the minds of consumers and a strong reputation for the high quality products and services that KALMAR provides. Looking to trade on the established goodwill of KALMAR, KLS recently began marketing lighting fixtures and related services using express references to KALMAR and KALMAR's project portfolio and long-standing history, even misappropriating identical language and images from KALMAR's website in the hope of misleading consumers into believing that KLS is somehow affiliated with KALMAR.

2.     To prevent this inevitable confusion among and deception of consumers and KLS's willful intent to trade on KALMAR's goodwill, KALMAR brings this action against KLS seeking injunctive relief as well as damages for trademark infringement, unfair competition, and false advertising arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.* (the "Lanham Act"), and for trademark infringement, unfair competition, trademark dilution, and deceptive business practices under the laws of the State of New York and the common law.

## THE PARTIES

3.     Plaintiff J.T. Kalmar GmbH is a limited liability company organized and existing under the laws of Austria with a principal place of business at Bennogasse 8, 1080 Vienna, Austria.

4.     Defendant KLS Lighting Co Ltd, f/k/a Kalmar Lighting Co Ltd, f/k/a Shanghai Kalmar Lighting Co Ltd is a corporation organized and existing under the laws of the State of New York with a principal place of business, upon information and belief, at 764 Route 25A,

Suite 5, East Setauket, New York 11733.

## JURISDICTION AND VENUE

5.     This action arises under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and subject matter jurisdiction is therefore conferred upon this Court by 28 U.S.C. §§ 1331 and 1338(a).

6.     This action also arises under statutory and common law of the State of New York, and supplemental jurisdiction over these related state law claims is conferred upon this Court by 28 U.S.C. § 1367.

7.     KLS is a corporation organized and existing under the laws of the State of New York, maintains a physical presence in the State of New York, and conducts business operations in the State of New York.

8.     KLS has taken and, upon information and belief, will continue to take actions, including those described in this Complaint, in the State of New York and, in particular in this judicial district, that cause injury to KALMAR.

9.     At the very least, by virtue of, *inter alia*, KLS's contacts with New York, including but not limited to the above-referenced activities and relationships to the State of New York, this Court has personal jurisdiction over KLS.

10.    Personal jurisdiction over KLS comports with due process.

11.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because (a) KLS resides in this judicial district, (b) a substantial part of the events or omissions giving rise to KALMAR's claims occurred and are occurring in this judicial district, and/or (c) KLS is subject to this Court's personal jurisdiction with respect to the instant action.

3

## FACTS

### KALMAR, Its Business and Its Intellectual Property Rights

12.     KALMAR is a family business based in Vienna, Austria, that has operated for over 130 years.

13.     KALMAR is one of the world's leading specialists in custom-designed and manufactured solutions for architectural lighting projects.

14.     Since at least as early as 1954, in connection with the trademark KALMAR, KALMAR and its predecessors in interest have marketed and sold throughout the United States a wide variety of custom and manufactured lighting fixtures (the "KALMAR Products") and have provided throughout the United States services including design and engineering, project management, production process, delivery and installation, and/or maintenance of lighting fixtures (the "KALMAR Services") (together, the "KALMAR Products and Services"). Examples of the KALMAR Products and Services are depicted in **Exhibit A** hereto.

15.     KALMAR is the majority shareholder of its subsidiary Kalmar Lighting Suzhou Co. Ltd., located in Shanghai, China, and any and all references in this Complaint to KALMAR include Kalmar Lighting Suzhou Co. Ltd. and each of KALMAR's other subsidiaries.

16.     KALMAR consists of several business units, including KALMAR Project, KALMAR Marine and KALMAR Werkstätten.

17.     KALMAR Project focuses on creating and installing custom chandeliers, and has installed such chandeliers, for example, in international landmarks that include the Russian Presidential Palace (Kremlin) and Grand Theatre Shanghai, in luxury hotels such as the Loews Miami Beach, and in private residences.

18.     KALMAR Marine manufactures, delivers and installs chandeliers and lighting

4

fittings in cruise ships, and has provided custom-made chandeliers and lighting solutions for many yachts and cruise lines, including for the cruise ships *Norwegian Epic*, *Norwegian Escape*, *Queen Elizabeth*, *Queen Mary*, *Queen Victoria*, *Oasis of the Seas*, *Allure of the Seas*, *Harmony of the Seas*, *Disney Fantasy* and *Disney Dreams*.

19.   KALMAR Werkstätten designs and manufactures table lamps, floor lamps, pendants, and wall lamps in the style of the Austrian Werkbund movement for interiors of many styles, across a range of functions.

20.   Within each of its business units, KALMAR's services include design and engineering, project management, production process, delivery and installation, and/or maintenance of luminaries.

21.   KALMAR takes great measures to ensure that its lighting concepts are developed according to specifications from architects and planners as well as on the basis of in-house designs and historical patterns.  The formal and technical specifications are precisely observed, presented and documented.  KALMAR's exact light calculations during the development phase as well as visualization of complex space situations ensure optimum light distribution and utmost efficiency.  The KALMAR Products comply with international and national regulations and safety standards, while retaining the positive attributes of traditional craftsmanship.

22.   KALMAR owns and operates the websites www.kalmarlighting.com, project.kalmarlighting.com and werkstaetten.kalmarlighting.com, among others (the "KALMAR Website(s)"), on which KALMAR advertises and displays the KALMAR Products and Services.

23.   KALMAR's website project.kalmarlighting.com, under the heading "ABOUT KALMAR" states, "[f]or 130 years, the Vienna-based family-owned business KALMAR has been one of the world's leading specialists in custom designed and manufactured solutions for

ME1 26037615v.3

architectural lighting projects. Our know-how is based on decades of intensive, on-going development as well as partnerships with leading architects and planners."

24.     KALMAR's website project.kalmarlighting.com, under the heading "PORTFOLIO," includes a listing of the locations, including, without limitation, hotels, cruise ships and private residences, for which KALMAR has provided the KALMAR Products and/or the KALMAR Services.  These project locations include, among others, Loews Miami Beach Hotel, the Keech Green Penthouse in New York City, the set for the movie *Ocean's 13*, and the cruise ships *Norwegian Epic* and *Oasis of the Seas*.

25.     KALMAR is the owner of the trademark KALMAR (the "KALMAR Mark"), which has been used by KALMAR and its predecessors in interest since at least as early as 1918 internationally, and since at least as early as 1954 in United States commerce.

26.     KALMAR is the owner of U.S. Registration No. 3,602,649 for the KALMAR Mark for "Contemporary decorative electric lights and decorative electric lights emulating historic antetypes, used in public, residential, architectural, commercial and industrial applications; and technical electric lights used in public, residential, architectural, commercial and industrial applications, namely, spotlights, cove lighting fixtures, downlight, recessed lighting fixtures and wall washers in the nature of lighting fixtures to be installed near walls to illuminate them," in International Class 11, and "Technological services, namely, technology consultation and research in the field of technical and decorative lights; design for others in the field of technical and decorative lights," in International Class 42, which was registered on April 7, 2009, and which is incontestable pursuant to 15 U.S.C. § 1065.  A true and correct copy of the registration for the KALMAR Mark and an excerpt from the U.S. Patent and Trademark Office's website that displays the current status of the registration are attached hereto as **Exhibit B**.

27.     The KALMAR Products and Services offered in connection with the KALMAR Mark are advertised and promoted on the Internet, including on the KALMAR Websites and on-line retailers such as www.1stdibs.com and www.pamono.com, at trade shows and exhibitions, including ICFF – New York in 2015, 2016 and 2017, and the Armory Show New York sponsored by KALMAR, and in at least a dozen magazines that are published worldwide, including advertisements in Wallpaper Magazine, Cruise Business Review, Hotel Spec, ICON, Monocle, Sleep Magazine and World of Interiors.

28.     The KALMAR Products also are offered for sale in retail and showroom locations in North America, including in New York, Florida, California and Illinois, and internationally, including in Australia, Canada, Denmark, Germany, France, Hong Kong, Italy, the Netherlands, Switzerland, Turkey and the United Kingdom.

29.     The KALMAR Products and Services are purchased by a wide variety of consumers, including but not limited to major corporations, hotel and cruise ship owners, governmental and religious organizations, and individuals.

30.     As a result of many years of marketing and selling the KALMAR Products and Services in connection with the KALMAR Mark by KALMAR and its predecessors in interest, the public has come to recognize the KALMAR Mark as identifying custom-designed and manufactured lighting solutions and related services that emanate from KALMAR.   The KALMAR Mark is distinctive and/or has acquired secondary meaning among purchasers designating origin, relationship, sponsorship and/or association with Plaintiff KALMAR.   The KALMAR Mark acquired this status long prior to the onset of KLS's wrongful acts described below.

31.     The KALMAR Mark has also acquired commercial strength due to the substantial

press devoted to KALMAR's prominent use of the KALMAR Mark in connection with its high-quality goods and services.

32.     KALMAR has received numerous awards and much critical acclaim for its works. By way of example, KALMAR's "Dornstab" floor lamp was awarded Best of the Year Award in the category Floor and Table Lighting by *Interior Design* magazine in 2008.  Also, KALMAR Products were featured in New York City's 11 Howard Hotel, which won several AHEAD America Awards in 2017, and in the Glass House Restaurant and Bar, which received the 2017 award for Best Design in Hospitality/Restaurant/Retail/Spa by the International Interior Design Association New England Chapter.  KALMAR's awards and critical acclaim date back to the 1800's, when KALMAR's predecessor in interest won an "Award For The Best Models And Highest Excellence Of Treatment" at the 1893 Columbian Exposition in Chicago.

**KLS and Its Wrongful Acts**

33.     KLS purports to offer custom-designed and manufactured solutions for architectural lighting projects.

34.     KALMAR formerly employed Mr. Loris Lightfoot, Mr. Chen Ding and Ms. Isabel Pan, each of whom was involved in running KALMAR's subsidiary in China, Kalmar Lighting Suzhou Co. Ltd., and is now a principal of KLS.

35.     Upon information and belief, Mr. Lightfoot, Mr. Ding and/or Ms. Pan formed the New York corporation Shanghai Kalmar Lighting Co Ltd on April 24, 2015, and began operating in the U.S. market through this New York corporation in or about April 2015.

36.     Upon information and belief, based on the records of the New York State Department of State that are attached hereto as **Exhibit C**, Shanghai Kalmar Lighting Co Ltd underwent a name change to Kalmar Lighting Co Ltd, which was filed with the New York State

Department of State on June 10, 2015, and Kalmar Lighting Co Ltd underwent a name change to KLS Lighting Co Ltd, which was filed with the New York State Department of State on July 10, 2017.

37.     Upon information and belief, one or more officers, representatives or agents of KLS, or its predecessor in interest, have directly solicited KALMAR's customers, including, at the very least, Conran UK, Champion Global Hong Kong and In-dulge.com, falsely claiming to sell goods and services associated with the KALMAR Mark.

38.     Upon information and belief, KLS or its predecessor in interest Kalmar Lighting Co Ltd, owns the domain kls-lighting.com, as shown in the Whois record from Tucows.com, which is attached hereto as **Exhibit D.**

39.     Upon information and belief, KLS or its predecessor in interest Kalmar Lighting Co Ltd operates the website www.kls-lighting.com (the "KLS Website").

40.     Based on the representations contained on the KLS Website, KLS was formed "[i]n order to develop market in United States."

41.     Upon information and belief, in connection with the solicitation of potential customers, KLS and/or the KLS Website referred, as recently as November 2017, to its business as "Kalmar Lighting" and "Kalmar Lighting Co Ltd" despite the 2015 name change of Kalmar Lighting Co Ltd to KLS Lighting Co Ltd.

42.     As recently as November 2017, the KLS Website used the name KALMAR in connection with selling or offering to sell lighting products and/or services related to the design, manufacture, installation and/or maintenance of lighting products.  As a representative example, as recently as November 2017, the KLS Website stated at http://www.kls-lighting.com/about/:

**KALMAR LIGHTING**

LIGHTING DESIGN & CUSTOM MADE

Kalmar Lighting Co Ltd is one of the world's leading specialists in custom designed and manufactured solutions for architectural lighting projects. Our know-how is based on decades of intensive, on-going development as well as partnership with leading architects and planners. Lighting concepts range from classic chandeliers to contemporary decorative luminaires and functional lighting solutions

43.     KALMAR has not authorized KLS or any of its officers, employees, agents or predecessors in interest to use the KALMAR Mark.

44.     The KLS Website contains text that is an identical or nearly identical copy of text from one or more of the KALMAR Websites.

45.     As a representative example, as shown on the attached **Exhibit E**, the KLS Website at http://www.kls-lighting.com/about/ states, KLS is "one of the world's leading specialists in custom designed and manufactured solutions for architectural lighting projects. Our know-how is based on decades of intensive, on-going development as well as partnership with leading architects and planners. Lighting concepts range from classic chandeliers to contemporary decorative luminaires and functional lighting solutions[.]"

46.     This text is essentially identical to text on the KALMAR Website http://project.kalmarlighting.com/, which states that for 130 years KALMAR has been "one of the world's leading specialists in custom designed and manufactured solutions for architectural lighting projects. Our know-how is based on decades of intensive, on-going development as well as partnerships with leading architects and planners.  Lighting concepts range from classic chandeliers to contemporary decorative luminaires and functional lighting solutions . . . ."

47.     Also as shown on the attached **Exhibit E**, the KLS Website at http://www.kls-lighting.com/about/ states, "Our policy is to focus all our activities on the human dimension. The

10

expectations and requirements of our clients define the criteria for which a formal and functional lighting solution must be found. Therefore we attach utmost importance to the intensive exchange of information between all involved parties and strict attention to the objectives and constraints in every phase of the project.  Our aim is absolute perfection in compliance with international and national regulations and safety standards, while retaining the positive effects of craftsmanship."

48.    The preceding text is identical to text on the KALMAR Website http://project.kalmarlighting.com/about-us/.

49.    At no time did KALMAR grant KLS or any of KLS's predecessors in interest permission, license or consent to reproduce, display or otherwise use in any way the text on any of the KALMAR Websites.

50.    The KLS Website claimed, as recently as November 2017, KALMAR's Products and Services as the products and services of KLS.

51.    For example, each of the references, except for one, listed as recently as November 2017 on the "Reference" list for "North America" on the KLS Website, as shown on the attached **Exhibit F**, is a reference of KALMAR, not a reference of KLS or any predecessor in interest of KLS.

52.    Furthermore, all or substantially all of the projects listed as recently as November 2017 in the drop down "Projects" menu on the KLS Website are projects of KALMAR, not projects of KLS or any predecessor in interest of KLS.

53.    At no time did KALMAR grant KLS or any of KLS's predecessors in interest permission, license or consent to list KALMAR's projects or references as the projects or references of KLS or any of  KLS's predecessors in interest.

11

54.     As recently as November 2017, the KLS Website also misappropriated images, including photographs, owned by KALMAR and in which KALMAR has a proprietary interest.

55.     As a representative example, images of lighting fixtures installed in the cruise ship *Norwegian Epic* displayed as recently as November 2017 on the KLS Website, as shown on the attached **Exhibit G**, are images owned by KALMAR and displayed on the KALMAR Website at http://project.kalmarlighting.com/erp-portfolio/ncl-epic/.

56.     As yet another example of KLS's misappropriation of images owned by KALMAR, images of lighting fixtures installed in the "London Mansion & New York Penthouse Designed by Keech Green Architectural Interiors, London" displayed as recently as November 2017 on the KLS Website, as shown on the attached **Exhibit H**, are images owned by KALMAR and displayed on the KALMAR Website at http://project.kalmarlighting.com/erp-portfolio/keech-green-london-mansion-new-york-penthouse/.

57.     As shown on the attached **Exhibit E**, as recently as November 2017, the KLS Website was wrongly claiming rights of copyright in the images owned by KALMAR, stating at http://www.kls-lighting.com/about/, "All images copyright Kalmar Lighting by KLS LIghting. All rights reserved."

58.     At no time did KALMAR grant KLS or any of KLS's predecessors in interest permission, license or consent to reproduce, display or distribute copies of images owned by KALMAR, and KLS owns no rights of copyright in the images owned by KALMAR currently or formerly displayed on the KLS Website.

59.     As recently as November 2017, the KLS Website also was misappropriating the descriptions for the projects completed by KALMAR and in which KALMAR has a proprietary interest.

60.     As a representative example, the description for the "Qatar National Convention Centre" project on the KALMAR Website http://project.kalmarlighting.com/erp-portfolio/qatar-national-convention-centre/ states:

> Judged as "unexpected, animated, beautiful", the Oyster lights were designed to alter the ceiling height and the ambience in large, multifunctional spaces. For convention, the luminaires sit "parked" and closed at a height of up to 16m. They can dramatically change colour and operate individually or in sequences. To create a more intimate mood, for banquets, for example, the light drops to a height of 2.7m, and slowly opens to reveal a dazzling 5m span of backlight, colour-changing crystal. Each fixture weighs 380kg and contains 13,700 Swarowski STRASS crystals and 856 RGB LEDs.  It was inspired by the sea life in the Gulf of Qatar and designed originally for the QNCC. The judges praised the way it conveys local culture and its "classy, extravagant, dazzling" design.

This description is essentially identical to the description found on the KLS Website as recently as November 2017, as shown on the attached **Exhibit I**.

61.     At no time did KALMAR grant KLS or any of KLS's predecessors in interest permission, license or consent to reproduce, display or otherwise use in any way KALMAR's project descriptions or any other text presently or formerly displayed on any of the KALMAR Websites.

**KLS's Wrongful Conduct Has Caused KALMAR Harm and Risks Future Harm**

62.     The statements previously and currently displayed on the KLS Website about KLS's history, project portfolio and reputation are false representations.

63.     KLS's use of the KALMAR Mark, its false statements and misrepresentations about the history of KLS and its projects and references, and its display on the KLS Website as recently as November 2017 of images owned by KALMAR of KALMAR's lighting fixtures are and were designed to confuse and deceive customers into believing that they are purchasing the KALMAR Products and/or Services when they are actually purchasing the products and/or services of KLS and cause consumers to mistakenly believe that there is an affiliation between

KLS and/or KLS's products or services on the one hand and KALMAR on the other hand.

64.     Given the similarity between channels of trade and target customers for both KLS's goods and services and the KALMAR Products and Services, the same consumers will encounter both the KALMAR Products and Services and the goods and services offered by KLS.

65.     The actions of KLS present an immediate, imminent risk to KALMAR's business, reputation and goodwill.

66.     KALMAR will suffer damages and irreparable harm unless the Court enjoins KLS from improperly using the KALMAR Mark, claiming KALMAR's project portfolio as its own, and misappropriating text from KALMAR's website and images owned by KALMAR and displaying these text and images as its own.

## COUNT I
### Federal Trademark Infringement, False Designation of Origin and Unfair Competition
### (15 U.S.C. §§ 1114 and 1125(a))

67.     KALMAR repeats and realleges the allegations set forth in each of the foregoing paragraphs of its Verified Complaint as if fully set forth herein.

68.     The KALMAR Mark is federally registered and is entitled to protection under both federal and common law.

69.     KALMAR and its predecessors in interest have been using the KALMAR Mark in conjunction with its lighting goods and services since at least 1918 internationally, and since at least 1954 in United States commerce, and have obtained common law rights to the same.

70.     The KALMAR Mark is distinctive and has become associated in the minds of the public with KALMAR, the KALMAR brand, and the high-quality KALMAR Products and Services.

71.     The KALMAR Mark and the goodwill of the business associated with it in the

United States and throughout the world are of great and significant value to KALMAR.

72.    KLS's acts described above have caused and are likely to continue to cause confusion and mistake, and to deceive customers, potential customers and the general purchasing public as to the source or origin of  KLS's goods and services and are likely to deceive the public into believing that  KLS's goods and services are those of KALMAR or are otherwise associated, connected, or affiliated with KALMAR, all to the damage and detriment of KALMAR's business, reputation, goodwill, and sales.

73.    KLS's acts have been – and continue to be – performed intentionally, maliciously, fraudulently and willfully for the purpose of deceiving the public, including KALMAR's customers and potential customers, into using and purchasing KLS's goods and services based on the false belief that those goods and services are associated with KALMAR.

74.    KLS has acted and is acting with specific intent to appropriate and employ for its own benefit the valuable goodwill and business reputation that the KALMAR Mark represents.

75.    At least by virtue of the prior employment of Mr. Lightfoot, Mr. Ding and Ms. Pan by KALMAR's subsidiary Kalmar Lighting Suzhou Co. Ltd., KLS had and has knowledge of the KALMAR trademark and the goodwill and business reputation associated with the KALMAR Mark.  KLS's bad faith is reflected by its election to use the KALMAR Mark despite this knowledge.

76.    KLS's unauthorized use of the KALMAR Mark constitutes trademark infringement of a federally-registered and common law trademark.  This has caused damage to KALMAR and to the substantial goodwill symbolized by the KALMAR Mark in violation of Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).

77.    KLS's acts described above, including unauthorized use of the KALMAR Mark

in interstate commerce, have caused and, absent an injunction, will continue to cause substantial and irreparable injury to KALMAR for which KALMAR has no adequate remedy at law. The injury includes substantial and irreparable injury to KALMAR's reputation and goodwill associated with the KALMAR Mark. KALMAR is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

78.     KLS's acts described above were and continue to be deliberate and willful. KALMAR is therefore entitled to recover damages in an amount to be determined at trial, profits made by KLS or any of its predecessors in interest from the sale of its goods and services in using KALMAR's Mark, and the costs of this action pursuant to 15 U.S.C. § 1117.

**COUNT II**
**False Advertising in Violation of Section 43(a) of the Lanham Act**
**(15 U.S.C. § 1125(a))**

79.     KALMAR repeats and realleges the allegations set forth in each of the foregoing paragraphs of its Verified Complaint as if fully set forth herein.

80.     KLS's acts of promoting, advertising and marketing its goods and services in connection with the name KALMAR or as being related to KALMAR, as well as KLS's false and misleading conduct described above, constitutes false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

81.     The misrepresentations that appeared as recently as November 2017 and are currently appearing on the KLS Website, including but not limited to KLS's expertise and the projects allegedly performed by KLS, constitute false or misleading statements of material facts used in a commercial advertisement or promotion in interstate commerce.

82.     KLS falsely claims it is "one of the world's leading specialists in custom designed and manufactured solutions for architectural lighting projects." Instead, KLS simply

16

misappropriated KALMAR's description of its expertise verbatim from one or more of the KALMAR Websites.

83.   KLS falsely claims its "know-how is based on decades of intensive, on-going development as well as partnership with leading architects and planners."  Instead, KLS simply misappropriated KALMAR's description of its expertise verbatim from the KALMAR Websites.

84.   KLS has falsely claimed to have performed over 20 prominent projects, all or nearly all of which were completed solely by KALMAR.

85.   The above statements are material insofar as they reference the nature of the source and quality of KLS's lighting products and its reputation and standing in the industry, both of which drive consumers' purchasing decisions.

86.   Furthermore, the above representations suggest to consumers that due to KLS's claimed long history and the magnitude and array of prominent projects that have been successfully completed by KLS, its goods and services are of high quality, reliable and can be trusted.

87.   KLS's acts are likely to deceive, and indeed have already deceived, consumers and have caused and are likely to continue to cause competitive and/or commercial injury to KALMAR in the nature of harm to KALMAR's goodwill and reputation and the resulting loss of sales.

88.   KLS's acts have been – and continue to be – committed intentionally, maliciously, willfully, and with the specific intent of deceiving buyers into purchasing KLS's goods and services based on the false belief that such goods and services are authentic high quality KALMAR Products and Services.

89.   KLS's acts described above, including its unauthorized use of the KALMAR

17

Mark in interstate commerce, have caused, and absent an injunction, will continue to cause substantial and irreparable injury to KALMAR for which KALMAR has no adequate remedy at law. This injury includes substantial and irreparable injury to KALMAR's reputation and goodwill associated with the KALMAR Mark. KALMAR is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

90. KLS's acts described above were and continue to be deliberate and willful. KALMAR is therefore entitled to recover damages in an amount to be determined at trial, profits made by KLS or any of KLS's predecessors in interest from the sale of their goods and services in connection with the KALMAR Mark, and the costs of this action pursuant to 15 U.S.C. § 1117.

## COUNT III
### Deceptive Acts in Violation of New York General Business Law
### (N.Y. Gen. Bus. Law § 349)

91. KALMAR repeats and realleges the allegations set forth in each of the foregoing paragraphs of this Verified Complaint as if fully set forth herein.

92. Without the consent or authorization of KALMAR, and with full knowledge of KALMAR's rights in the KALMAR Mark and the reputation and goodwill associated with the KALMAR Mark, KLS has used the KALMAR Mark and images and descriptions of nearly 20 prominent projects completed by KALMAR in connection with selling, offering for sale, advertising and promoting KLS's goods and services in, among other places, the State of New York.

93. KLS's actions are directed at consumers and are likely to cause confusion, mistake or deception as to the affiliation, connection or association of KLS with KALMAR, or as to the origin, sponsorship or approval of KLS's goods and services by KALMAR. A

reasonable consumer would find KLS's actions to be misleading.

94.     Upon information and belief, KLS directly solicited KALMAR's customers, falsely claiming to sell goods and services associated with the KALMAR Mark, when no such association has existed or currently exists, thereby attempting to deceive and/or deceiving consumers to purchase goods of inferior quality or goods they would not otherwise prefer.

95.     KLS's actions also have the potential to mislead and/or have misled consumers into believing that KLS's goods and services meet the quality control standards that consumers associate with KALMAR, the KALMAR Products and Services and the KALMAR Mark.

96.     As a direct and proximate result of KLS's conduct, KALMAR and consumers have been harmed and will continue to suffer both immediate and irreparable harm as well as monetary damages.  KALMAR and consumers will continue to be harmed unless the Court enjoins KLS from further use of the KALMAR Mark, from deceiving consumers, and from otherwise unfairly competing with KALMAR.

97.     KALMAR also seeks actual damages in accordance with N.Y. Gen. Bus. Law § 349-h.

**<u>COUNT IV</u>**
**Trademark Dilution in Violation of New York General Business Law**
**(N.Y. Gen. Bus. Law § 360-L)**

98.     KALMAR repeats and realleges the allegations set forth in each of the foregoing paragraphs of this Verified Complaint as if fully set forth herein.

99.     KALMAR has prior rights in its KALMAR Mark based on its federal registration and its prior common law use of the mark in New York State.

100.    The KALMAR Mark possesses a distinctive quality capable of dilution and is a world-renowned and widely recognized designation of the source of the KALMAR Products and

Services, including but not limited to custom and manufactured lighting solutions and the design and engineering, project management, production processes, delivery and installation, and maintenance of lighting objects.

101.    KLS has willfully appropriated the goodwill that KALMAR has created and cultivated in the KALMAR Mark since KLS had knowledge of KALMAR's prior use of the KALMAR Mark.

102.    Due to KLS's use of the KALMAR Mark, the mark may lose its ability to serve as a unique product and services identifier for KALMAR.  KLS's actions thus deliberately and maliciously dilute the distinctive quality of the KALMAR Mark.

103.    Given the relatedness of the goods and services offered by KALMAR and KLS, a mental association between the parties and/or their marks exists or is likely to exist in the minds of consumers.  This suggested association blurs the distinction between the two companies in the public's mind.

104.    The use of the KALMAR Mark on goods and services that do not comport with the high standards of quality, craftsmanship, and other requirements of KALMAR will cause dilution by tarnishment of the KALMAR Mark, thereby causing negative associations with the KALMAR Mark and eroding the goodwill and reputation symbolized thereby.

105.    KLS's acts constitute trademark dilution under New York law, including but not limited to, New York General Business Law § 360-L.

106.    As a direct and proximate result of KLS's conduct, KALMAR has been harmed and will continue to suffer both immediate and irreparable harm as well as monetary damages. KALMAR will continue to suffer harm unless the Court enjoins KLS from continuing to use the KALMAR Mark.

ME1 26037615v.3

## COUNT V
### Trademark Infringement in Violation of New York Common Law

107.    KALMAR repeats and realleges the allegations set forth in each of the foregoing paragraphs of this Verified Complaint as if fully set forth herein.

108.    KALMAR has obtained a federal registration for the KALMAR Mark, and has obtained common law trademark rights by its good faith use in New York State of its KALMAR Mark in connection with its lighting goods and services since at least 1954.

109.    Based upon the actions described above, KLS has repeatedly infringed KALMAR's common law trademark rights in its KALMAR Mark.  This infringement is likely to cause and, in fact, causes consumer confusion, and KALMAR is entitled to enforce its rights in its trademark to prevent such confusion and to prevent harm to its valuable brand.

110.    As a direct and proximate result of KLS's conduct, KALMAR has been harmed and will continue to suffer both immediate and irreparable harm as well as monetary damages. KALMAR will continue to suffer harm unless the Court enjoins KLS from continuing to use the KALMAR Mark.

## COUNT VI
### Unfair Competition in Violation of New York Common Law

111.    KALMAR repeats and realleges the allegations set forth in each of the foregoing paragraphs of this Verified Complaint as if fully set forth herein.

112.    KALMAR has built up significant goodwill in its KALMAR Mark, by investing its labors, advertising and talent in promoting its brand and using the KALMAR Mark in a clear and conspicuous manner in connection with its high-quality goods and services.

113.    Through its misuse of the KALMAR Mark, KLS has maliciously appropriated the goodwill that KALMAR has built in its brand.  KLS's misappropriation of KALMAR's goodwill

21

has been deliberate and in bad faith.

114.    At least by virtue of the prior employment of Mr. Lightfoot, Mr. Ding and Ms. Pan with KALMAR's subsidiary Kalmar Lighting Suzhou Co. Ltd., KLS had and has knowledge of the KALMAR Mark and the goodwill and business reputation associated with the KALMAR Mark.  At the very least,  KLS's bad faith is reflected by its election to use the KALMAR Mark despite this knowledge.

115.    KLS's acts have caused and are likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of KLS with KALMAR, or as to the origin, sponsorship, or approval of KLS's goods and services by KALMAR.

116.    With knowledge of KALMAR's renown and distinction, KLS intended to trade, has traded, and upon information and belief, will continue to trade on the goodwill and brand recognition of the KALMAR Mark.

117.    KLS's acts are performed to the detriment and damage of KALMAR and to the unjust enrichment of KLS.

118.    KLS's acts as described above constitute common law unfair competition under New York law, and have caused and will continue to cause impairment of the recognition of the KALMAR Mark, and diminution of the value thereof.

119.    As a direct and proximate result of KLS's conduct, KALMAR has been harmed and will continue to suffer both immediate and irreparable harm as well as monetary damages. KALMAR will continue to suffer harm unless the Court enjoins KLS from continuing to use the KALMAR Mark.

## PRAYER FOR RELIEF

WHEREFORE, KALMAR respectfully requests that this Court enter judgment in its favor granting the following relief:

A. Declaring that KLS has engaged in trademark infringement in violation of 15 U.S.C. § 1114;

B. Declaring that KLS has engaged in unfair competition and false advertisement in violation of 15 U.S.C. §1125(a);

C. Declaring that KLS has violated New York General Business Law Article 22-A § 349;

D. Declaring that KLS has violated New York General Business Law Article 24 § 360-L;

E. Declaring that KLS has engaged in trademark infringement in violation of New York common law;

F. Declaring that KLS has engaged in unfair competition in violation of New York common law;

G. Issuing orders granting a preliminary injunction and a permanent injunction enjoining KLS, as well as its successors, assigns, officers, agents, servants, employees, attorneys, and all those persons acting in concert or participating with any of the aforementioned entities and persons from:

    1. using in any manner the KALMAR name and/or the KALMAR Mark, or any other mark, symbol, or word or colorable imitation thereof, which so resembles the KALMAR Mark as to be likely to cause confusion, deception, or mistake on or in connection with the distribution, advertising,

promotion, provision, offering for sale or sale of any goods or services;

2. passing off, inducing or enabling others to sell or pass off any goods or services as and for goods or services produced or offered by KALMAR, which are not in fact KALMAR's goods or services, or not produced under the control and supervision of KALMAR and approved by KALMAR for sale under its KALMAR Mark;

3. committing any acts calculated to cause consumers to believe that KLS's goods and services are sold under the control or supervision of KALMAR, or are sponsored or approved by, connected with, affiliated with, guaranteed by, or produced under the control and supervision of KALMAR;

4. further diluting and infringing the KALMAR Mark and damaging KALMAR's reputation and its goodwill in its KALMAR Mark;

5. otherwise competing unfairly with KALMAR in any manner; and

6. shipping, delivering, transferring or otherwise furnishing, in any manner, products or services which bear or are offered in connection with the KALMAR Mark or any mark confusingly similar thereto.

H. Directing KLS to account for the profits realized by KLS as a result of the unlawful actions as alleged herein;

I. Awarding KALMAR all of KLS's profits resulting from the unlawful actions as alleged herein, and further awarding KALMAR actual damages, and enhanced damages as permitted by law;

J. Awarding KALMAR pre-judgment and post-judgment interest at the maximum

24

allowable rate;

K.  Awarding KALMAR its attorneys' fees to the extent permitted;

L.  Awarding KALMAR its costs and expenses in this action; and

M.  Awarding KALMAR all other such relief as the Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

KALMAR hereby requests a trial by jury on all issues so triable.


Dated:  December 7, 2017

s/Matthew Sklar
Matthew Sklar
Scott S. Christie (*pro hac vice* to be applied)
Carissa L. Rodrigue (*pro hac vice* to be applied)
Olga Ugolev (*pro hac vice* to be applied)
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4056
Tel:  (973) 622-4444
Fax:  (973) 624-7070
msklar@mccarter.com
schristie@mccarter.com
crodrigue@mccarter.com
ougolev@mccarter.com

*Attorneys for Plaintiff*
*J.T. Kalmar GmbH*

25

## VERIFICATION

1.      I am the Managing Director of J.T. Kalmar GmbH, the Plaintiff in this matter.

2.      The factual allegations in the foregoing Verified Complaint are true and correct, except for such allegations made upon information and belief, which I believe to be true and correct.

3.      The Verified Complaint is made in good faith and without collusion for the causes set forth therein.

4.      I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

KALMAR
J.T. Kalmar GmbH
Bennogasse 8/7
1080 WIEN

_____
August Calice

Dated:  December 7, 2017